Reuben King died early in 1869, leaving a will, which was admitted to probate in the county of Robeson, wherein he resided, and William J. Brown, the sole executor therein named, qualified as such. He proceeded with his administration until, for cause shown, and without having completed it, he was, on 21 November, 1878, removed from office and *Page 306 
the letters testamentary issued to him recalled. On 23 December, 1880, the plaintiff was duly appointed administrator de bonis non, with the will annexed, on the estate of the testator, who has realized out of the assets delivered over to him some $1,700; and on 2 December, (379) 1881, instituted before the clerk the present special proceeding against the removed executor and the devisees in the will, to obtain license and an order to sell the numerous lots and tracts of land mentioned in the complaint, for their conversion into assets, to be applied in the discharge of an indebtedness of the testator to an amount estimated to be ten thousand dollars. Before answering, a particular and detailed statement of the claims was ordered, on application of the defendants, and rendered by the plaintiff. The answers, which are voluminous, controvert the validity of the demands, and set up as a defense to them, as also to the present suit, the bar of the statute of limitations. Out of these conflicting averments springs the defense arising out of the lapse of time, and waiving a jury trial, it was agreed that the judge should find the facts. Accordingly, in addition to those above stated, he finds the following facts in regard to each of the debts set out in the plaintiff's bill of particulars:
1. Claim of Eli Bumble. This is a suit now pending in the Superior Court of Robeson County, which was brought by Eli Bumble against W. J. Brown, executor of R. King, on 14 February, 1870, upon receipts given by R. King, as sheriff, for claims within a magistrate's jurisdiction, placed in his hands for collection by Bumble, after a demand made for payment of amounts collected on same by the said Bumble, on the said W. J. Brown, executor, a short time before the commencement of said action.
2. Judgment of R. M. Norment for $2,817.91. This judgment was obtained at May Term, 1887, of the Superior Court of Robeson County, on a bond executed by R. King to W. R. Bryan, dated 14 February, 1857, for $1,000, due one day after date, and endorsed by the said W. R. Bryan to Norment; and the action was commenced 16 September, 1873.
(380) 3. Judgment of James A. Phillips against W. J. Brown, executor of R. King. This was a judgment obtained at March Term, 1873, of the Superior Court of ______ County, for the sum of $128.10, with interest from 20 February, 1871, and costs, $4.13.
4. Judgment of D. F. Edmund, administrator of A. J. Butt, against W. J. Brown, executor of R. King. This judgment was obtained at January Term, 1873, of the Superior Court of Robeson County, for the sum of $481.54 and interest on $261 until paid, and cost. The suit in which this judgment was obtained was brought upon a guardian bond *Page 307 
executed by Zela Butt, guardian of A. J. Butt, on which R. King was surety. The suit was commenced 14 February, 1870, and the said guardian bond was dated 30 November, 1858.
5. Judgment of Augustus Smith, administrator of Augustus Smith, against W. J. Brown, executor of R. King. This judgment was obtained at January Term, 1873, of Superior Court of Robeson County, for the sum of $100, and costs; and the action in which it was obtained was commenced on 14 February, 1870, and was brought upon receipts given by R. King, sheriff of Robeson County, to Augustus Smith, for claims within a magistrate's jurisdiction put in King's hands for collection, and upon a demand made upon said Brown, executor of King, by said Smith a short time before said action was commenced.
6. Judgment of D. Cromartie against W. J. Brown, executor of R. King. This judgment was obtained at January Term, 1873, of the Superior Court of Robeson County, and the action, in which it was obtained, commenced on 10 February, 1870, and the cause of action in said suit was on claims within a magistrate's jurisdiction, placed in the hands of the said R. King, sheriff of Robeson County, by said Cromartie, and upon a demand made on W. J. Brown, executor (381) of R. King, by said Cromartie a short time before the commencement of said action.
7. Judgment of Mary A. Barnes against W. J. Brown, executor of Reuben King. This judgment was obtained at March Term, 1875, of the Superior court of Robeson County, for $127.99 and cost. This suit was brought on a note executed by said King to Barnes.
8. Judgment of Wiley B. Fort, administrator of John Cooley, against W. J. Brown, executor of R. King.
That at January Special Term, 1874, of Robeson Superior Court, the following entries were made:
WILEY B. FORT, administrator of John Cooley, deceased,
vs.
W. J. BROWN, executor of Reuben King, deceased.
The following jurors, to wit: Bryant Leggett, Robert Council Thomas A. Norment, J. T. Phillips, Ebb Jones, J. c. Freeman, Alva Lawson, James A. Lawson, Willis Lawson, Josua Phillips, Caleb Butt and Henry Pitman, being chosen, tried and sworn to try the issues between the parties, say: That they find all of said issues in favor of the plaintiff, and assess his damages at $555.49, with interest thereon from 1 January, 1870, until paid, and cost of suit.
Thereupon it is considered by the Court that the plaintiff do recover from the defendant his said damages and cost of suit. *Page 308 
Rule for new trial. Rule discharged.
Appeal craved and granted. Notice waived.
And that at Fall Term, 1875, of Robeson Superior Court, the following entries were made:
STATE ex rel. WILEY B. FORT, administrator of John Cooley,
vs.
W. J. BROWN, executor of R. King.
SUIT ON SHERIFF'S BOND.
Judgment of January Term, 1874, affirmed and made the judgment of this term. Judgment for cost. Let execution issue.
(382) The above action was brought on a receipt given by R. King to said Cooley for claims within a magistrate's jurisdiction, placed by Cooley in King's hands, as sheriff, to collect, and upon a demand made upon W. J. Brown, executor of Reuben King, by Fort, administrator of Cooley, a short time before said action was commenced.
9. Judgment of John Smith against W. J. Brown, executor of Reuben King, deceased. This judgment was obtained at August Term, 1870, of the superior Court of Robeson County, for $2,687.74 and interest on $1,638.74, principal money, and cost of suit, and that there was a payment made on said judgment 10 January, 1873, of $980.40 by said Brown, executor of Reuben King; that the suit in which this judgment was obtained was commenced 28 January, 1869, before the death of Reuben King, and upon a bond executed by the said Reuben King to said John Smith, 19 December, 1859, for $1,638.76.
10. Judgment of John Smith against W. J. Brown, executor of Reuben King. This judgment was obtained at the August Term, 1870, of the Superior Court of Robeson County, for $257.46 and interest on $150, principal money, until paid, and cost. The suit in which this judgment was obtained was commenced 28 January, 1869, before the death of said Reuben King. The cause of action on which said suit was brought was on a bond executed by said Reuben King to John Smith, 18 September, 1858, and due one day after date, and none of said judgments have been paid.
11. Judgment of James McHargue against W. J. Brown, executor of R. King. Judgment in Superior Court of Robeson County for $1,458.01, 10 December, 1877.
His Honor further finds, as a fact, that the said W. J. Brown, executor of Reuben King, immediately after his qualification, (383) made advertisement, as required by law, for creditors of the estate of R. King to present their claims. *Page 309 
The devises pleaded statute of limitations — ten years bar and seven years bar.
On the foregoing facts his Honor — being of the opinion that the plaintiff's cause of action was barred by the statute of limitations — adjudged that the defendants go without day, and recover of the plaintiff the cost of action.
Plaintiff appealed.
The right to bring this action accrued to the plaintiff on his appointment to office, on 23 December, 1880, and the action was begun on 2 December, 1881, less than a year afterwards; so it is not barred by the statute of limitations as against the removed executor, according to the ruling in Lawrence v. Norfleet, 90 N.C. 533, and Worthy v. McIntosh,ibid., 536.
As, however, this defendant has no property out of which a recovery against him for waste and mismanagement of the trust estate could be satisfied, the recourse to the devised land is the sole remedy open to the creditors. That the law does allow access to the real estate of the deceased debtor under such circumstances, is decided in Badger v. Jones,66 N.C. 305; Latham v. Bell, 69 N.C. 135; and Blount v. Pritchard,88 N.C. 445.
If, however, the statutory bar interposes to obstruct the successful prosecution of these claims, and this defense to the action is open to the devises and owners of the real estate, then in the absence of any definite ascertained indebtedness requiring a sale of the land, a license to make the sale ought not to be granted to the administrator, at least until the controversy about the debts shall be settled and decided. The defendants insist that the claims, if otherwise capable of being enforced, are barred by the lapse of time and long delay, and the (384) judge, concurring in the sufficiency of the defense, rendered judgment against the plaintiff, and he appealed.
1. The first of the disputed claims, that of Eli Bumble, may be left out of view in this inquiry, since, it is depending, undetermined and resisted. As it may not be established, it cannot be the basis of a proceeding against the land, at least until it is recovered.
2. The judgment rendered in favor of R. M. Norment, at May Term, 1887, although upon a cause of action accruing on 15 February, 1857, and prosecuted first against the executor and then against the administrator, conclusively settles an indebtedness existing before this action was begun, and its validity established after a protracted litigation. *Page 310 
This debt must be paid for aught shown in the record, and is entitled to satisfaction out of the real estate. This alone is sufficient to reverse the judgment and dispose of the appeal, and we should pause to proceed further but that the different claims will, under the ruling, have to be decided when the fund is to be distributed, and should be before the sale, in order that the sum to be raised may be definitely ascertained.
3 — 6. The next four, belonging respectively to James A. Phillips, D. F. Edmunds, Augustus Smith and D. Cromartie, were reduced to judgment, against the executor in the first two months of the year 1873, and in their demands against the real estate are essentially the same.
The causes of action are merged in the judgments, and hence come under the new statute of limitations, and the seven years elapsing since, before the beginning of the present suit, would effectually obstruct a recovery alone considered, according to the cases already cited. Lawrencev. Norfleet, Worthy v. McIntosh, supra, and Bevers v. Park, 88 N.C. 456.
(385) The last decides that a judgment recovered against an administrator upon a cause of action, which, but for such judgment, would be barred, cannot be maintained against the statutory bar set up by the heirs to a proceeding instituted to sell the descended lands. The ruling is somewhat restricted in the subsequent case of Speer v. James,94 N.C. 417, so far as it affects the force and effect of the judgment rendered against the personal representative; but it supports the proposition that where the statutory bar would be available to him in protecting the personal, so it will be to the heir in protecting the real estate, against the demand of a creditor. Syme v. Badger, 96 N.C. 197;Andres v. Powell, 97 N.C. 155. Bevers v. Park differs only in this particular, that in it the administration was granted after 1 July, 1869, while in that before us, the letters testamentary issued before that date, and this brings us to an examination of what is supposed to be conflicting legislation, found in the Code of Civil Procedure and in the acts subsequently passed regulating the administration and settlement of the estates of deceased persons, which are now associated in The Code, chapter 33, under the title "Executors and Administrators."
The first enactment introducing radical changes in the law, which took effect in July, 1869, was passed and ratified on 6 April preceding, and was followed by an amendment, ratified on 1 March of the next year, confining its operation to estates whereof original administration shall have been granted since 1 July, 1869. It further declares, that "all estates whereon administration was granted prior to the said first day of July, one thousand eight hundred and sixty-nine, shall be dealt *Page 311 with, administered and settled according to the law as it existed just prior to the said date, and it is hereby declared that such was the true intent and meaning of said act" (the act of 1869), with a proviso, "that nothing herein contained shall be construed to prevent the application of said act, so far as it relates only to the courts having jurisdiction of any action or proceeding for the settlement of an (386) administration, or to the practice or procedure therein." The Code, sec. 1433.
Again, at the session of 1871-'72, was passed "An act to prescribe the practice and procedure in actions by creditors of deceased persons against their personal representatives," chapter 213, which, as the title imports undertakes to regulate the proceeding to be pursued by creditors in bringing about a settlement of the estate of their claims against it, of which section 29 declares, that the "act shall apply only to cases where the grant of letters of collection, or of probate, or of administration, shall have issued on or after the first day of July, one thousand eight hundred and sixty-nine."
An amendment was made to this section by the act of 3 March, 1873, chapter, 179, by adding the words, "except in cases of administration debonis non upon estates where the former letters of administration or letters testamentary were granted prior to the first day of July, one thousand eight hundred and sixty-nine, in all which case estates shall beadministered, closed up and settled according to the law as it existed just prior to the first of July, one thousand eight hundred and sixty-nine."
These provisions will be found in The Code, secs. 1433 and 1476 and connecting sections. It will be noticed that this new legislation has reference solely to matters connected with the administration andsettlement of deceased persons' estates, and is not inconsistent with the provision in the superseding statute of limitations, which governs only in cases where the right of action accrues subsequent to the specified date, and was intended to harmonize the new legislation with the new practice. It does not profess to interfere with the statute, which discriminates between actions the right to bring which existed anterior to the adoption of the Code of Procedure, and those that arose afterwards; and to render the enactments consistent with each other, and give effect to both, we must except from the operation of those which relate to the (387) subject of administration so much of that declaring the application of the superseding limitations to the kind of actions mentioned. Such has been the interpretation in cases heretofore adjudged, and such we are constrained to accept as a just exposition of the law, in the absence of any intimation of an intention to interfere with the *Page 312 
operation of the act of limitations. Moreover, the time in which creditors are allowed to bring suit does not enter into the mode of administering the estates of deceased property owners by representatives, which it was the purpose of the legislation to regulate by the displacing statutes, the scope and the operation of which will be plainly seen in examining their provisions. But while the bar would be in the way if there had been one continuous administration of the same person, it has been broken by the removal of the executor, and interrupted in its course for more than two years, during which the judgment could not be enforced by action of the creditor, and in less than one year after the appointment of the plaintiff as administrator this action was brought, and arrests the running of the statute.
It is declared in section 164 of The Code, that "if a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his personal representative after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."
This clause uses language appropriate to actions against a debtorpersonally and not barred by the statute at the time of his death, and not verbally to a case where one representative dies, or is removed, and another succeeds to his place and carries on the work of administration left unfinished, yet the analogy is so complete, and the spirit, if not the letter of the act, reasonably interpreted, so closely applicable to the present facts, that we feel constrained to bring them under its (388) provisions, so as to embrace them. The years prolonging the period within which the action may be brought, to wit, from the plaintiff's appointment on 23 December, 1880, to 2 December, 1881, the time of beginning the suit, has not expired by twenty-one days, and thus these judgments escaped the bar, and may be enforced against the debtor's lands in the lands of the heirs, unless alienated in pursuance of section 1442 of The Code, in which case the proceeds of the sale are in place of the land sold.
The same disposition must be made of the several judgments in favor of Mary A. Barnes, Wiley B. Fort and James McHargue.
The judgments recovered by John Smith must be excluded, as they were rendered at August Term, 1870, of the Superior Court of Robeson, and the seven, and even ten years, had passed before this suit, and the shorter period even before the removal of the executor, so they are not protected by the proviso mentioned.
While the seven years limitation is dependent upon a compliance with the condition that due advertisement is made as required by law, *Page 313 
this prerequisite must be confined to cases of original administrationgranted, and cannot apply to administrations de bonis non where the former administrator or executor (as found in this case) has complied with all the requirements of the laws then in force, for such administrator de bonis non
but takes up the broken thread and carries out an interrupted and incomplete administration. The two constitute a single administration of the estate.
We must therefore overrule the decision in the court below, and reverse the judgment for the error assigned, to the end that the cause may proceed in the court below in accordance with this opinion.
Error.
Cited: S. c., 101 N.C. 347; Lee v. Beaman, ibid., 298; Brittain v.Dickson, 104 N.C. 553; Clement v. Cozart, 107 N.C. 700; Dickson v.Crawley, 112 N.C. 633; Mann v. Baker, 142 N.C. 237; Best v. Best,161 N.C. 516; Fisher v. Ballard, 164 N.C. 328; Barnes v. Fort, 169 N.C. 435;McNair v. Cooper, 174 N.C. 568.
(389)